SENTARA VIRGINIA BEACH
GENERAL HOSPITAL,
Plaintiff,

v.

June C. LEBEAU, Executor of the Estate of Ernest R. Lebeau, and June C. Lebeau, Individually, Defendants and Third–Party Plaintiffs,

v.

A.S.G., Inc., and Trigon Insurance Company, Third–Party Defendants.

No. 2:01CV242.

United States District Court,
E.D. Virginia.
Norfolk Division.

Feb. 22, 2002.
Order March 1, 2002.

Michael Edward Bowerman, Esquire, Bowerman and Willis, Virginia Beach, VA, Counsel for Plaintiff.

John B. Mann, Esquire, Levit, Mann & Halligan, Richmond, VA, James Patrick St. Clair, Esquire, Catherine J. Rogers, Esquire, Norris & St. Clair, PC, Virginia

Beach, VA, Counsel for Defendants and Third Party Plaintiffs.

William C. Bischoff, Esquire, Mark T. Del Duca, Esquire, Kellam T. Parks, Esquire, Stallings & Richardson, P.C., Virginia Beach, VA, Counsel for A.S.G., Inc. Third–Party Defendant.

Richard J. Cromwell, Esquire, McGuire-Woods, LLP, Norfolk, VA, John B. Nicholson, Esquire, Trigon Blue Cross Blue Shield, Richmond, VA, Counsel for Trigon Insurance Company Third–Party Defendant.

## OPINION

REBECCA BEACH SMITH, District Judge.

This matter is before the court on plaintiff Sentara Virginia Beach General Hospital's motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56(b). For the reasons set forth below, plaintiff's motion is **GRANTED** in part and **DENIED** in part.

### I. Factual and Procedural History

The following facts for this motion for summary judgment are undisputed. In February, 1999, Ernest R. LeBeau had a right lung mass that was diagnosed as adenocarcinoma. He underwent chemotherapy, which was completed on April 16, 1999, and radiation treatment, which was completed on April 28, 1999. On May 12, 1999, Mr. LeBeau was admitted to Sentara Virginia Beach General Hospital ("SVBGH") for a diagnostic out-patient CT scan of his head and chest. After the CT scan showed the lung mass had decreased in size only minimally, if at all, Mr. LeBeau was admitted to SVBGH on May 28, 1999, for surgery to remove the lung mass, which became a pneumonectomy as the entire lung had to be removed. (Supplemental Undisputed Fact 9A.) As indicated on SVBGH's admission checklist, SVBGH requested and received preauthorization/precertification from Trigon Blue Cross Blue Shield, the insurance company whose card Mr. and Mrs. LeBeau presented to SVBGH. (Virginia Beach General Hospital Admitting Checklist, submitted with Marian McCoy's Aff. in Supp. of SVBGH Mot. for Summ. J.)

After the surgery, Mr. LeBeau required forty-one days of extensive in-patient treatment. On June 24, 1999, Trigon Blue Cross Blue Shield sent a letter to SVBGH certifying additional days as medically necessary, and listed June 29, 1999, as the next review date for Mr. LeBeau's continued hospitalization. On June 29, 1999, Trigon Blue Cross Blue Shield again sent a letter to SVBGH certifying additional days as medically necessary, and listed July 2, 1999, as the next review date for Mr. LeBeau's continued hospitalization. On July 2, 1999, Trigon sent a third letter to SVBGH certifying additional days as medically necessary, and listed July 9, 1999, as the next review date for Mr. LeBeau's continued hospitalization. (Trigon Blue Cross Blue Shield Letters, submitted with Marian McCoy's Aff. in Supp. of SVBGH's Mot. for Summ. J.) Mr. LeBeau died on July 8, 1999.

The total charge for services provided by SVBGH totaled $241,193.85. The charge for the May 12, 1999, admission was $1,827.75, and the charge for the May 28 to July 8, 1999, admission was $239,366.10. Both parties agree the total charge is (a) correct, (b) reasonable, and (c) for services that were (1) medically necessary and (2) prescribed by Mr. LeBeau's attending physicians. All of the health care provided was deemed necessary to preserve Mr. LeBeau's life and health. (Final Pretrial Order at 9.)

On January 8, 2001, SVBGH brought suit in Virginia state court for $241,193.85, plus attorneys fees and interest, against defendants June C. LeBeau, Executor of

the estate of Ernest LeBeau, and June C. LeBeau, Individually (collectively, "LeBeau"). LeBeau filed a third-party motion for judgment against A.S.G., Inc., d/b/a Angelos Restaurant, and Trigon Insurance Company. Trigon Insurance Company removed the case to federal court on April 5, 2001. By order dated August 2, 2001, LeBeau's amended third-party complaint was filed. SVBGH moved for summary judgment on September 18, 2001, and submitted a memorandum of law in support of its motion for summary judgment on September 20, 2001. LeBeau filed a memorandum in opposition to summary judgment on October 3, 2001, to which SVBGH replied on October 9, 2001. SVBGH submitted a supplemental brief in support of its motion for summary judgment on February 15, 2002, together with a motion for leave to file additional submissions in support of its motion for summary judgment which the court hereby **GRANTS**. The motion for summary judgment is now ripe for review.

## II. Analysis

As previously stated, the parties do not disagree that the services were performed, that the services were medically necessary, that the services were prescribed by Mr. LeBeau's attending physician, and that the cost of the services was $241,193.85. Ms. LeBeau, as Executor of the Estate of Ernest R. LeBeau, admits the Estate is liable to SVBGH for the total of its two accounts, $241,193.85, plus 9% interest thereon from August 9, 1999 (30 days after initial billing) and 33⅓% contractual attorneys fees. (Final Pretrial Order at 8). However, in her individual capacity, LeBeau disputes SVBGH's statement that it is an undisputed fact that the medical care and hospital treatment Mr. LeBeau received should be considered "emergency medical and hospital care, as defined in Virginia Code § 8.01–220.2." (SVBGH Mot. for Summ. J., Undisputed Facts, ¶ 1.) If the care meets

the definition in the Virginia statute, LeBeau is also individually liable.

Virginia Code § 8.01–220.2, "Spousal liability for emergency medical care," states:

On and after July 1, 1984, each spouse shall be jointly and severally liable for all emergency medical care furnished to the other spouse by a physician licensed to practice medicine in the Commonwealth, or by a hospital located in the Commonwealth, *including all follow-up inpatient care provided during the initial emergency admission* to any such hospital, which is furnished while the spouses are living together. For the purposes of this section, emergency medical care shall mean any care the attending physician or other health care professional deems necessary to preserve the patient's life or health and which, if not rendered timely, can be reasonably anticipated to adversely affect the patient's recovery or imperil his life or health.

Va.Code Ann. § 8.01–220.2 (Michie 2000)(emphasis added).

 While the court has not found any Virginia case law interpreting § 8.01–220.2, the terms in the statute should be given their plain meaning. *See, e.g., Perrin v. United States,* 444 U.S. 37, 42, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979) (words not specifically defined in statute should be given ordinary or common meaning). The statute clearly designates the spouse's responsibility for in-patient care attendant to an emergency admission to be "follow-up in-patient care *provided during the initial emergency admission."* Va.Code Ann. § 8.01–220.2 (emphasis added). Under the undisputed facts, Mr. LeBeau's in-patient care from May 28, 1999, until his death on July 8, 1999, was not provided *during* any initial emergency admission, which is a prerequisite under the statute for coverage

of the in-patient care.[1] Following the CT scan on May 12, 1999, Mr. LeBeau scheduled his May 28, 1999, lung surgery two weeks in advance, on May 14, 1999. (SVBGH Supplemental Undisputed Facts ¶ 9(a).) Mr. LeBeau received pre-approval from his health care provider for this scheduled surgery. (Virginia Beach General Hospital Admitting Checklist, submitted with Marian McCoy's Aff. in Supp. of SVBGH Mot. for Summ. J.)

■ Further, under the undisputed facts, Mr. LeBeau's outpatient treatment for the CT scan on May 12, 1999, was not emergency medical care that would fall within the statute's scope. After being diagnosed with lung cancer in February, 1999, Mr. LeBeau underwent chemotherapy, which was completed on April 16, 1999, and radiation, which was completed on April 28, 1999. Dr. Braunstein's admission summary indicates that Mr. LeBeau had a CT scan on May 12, 1999, in order for his doctors to ascertain whether there was any change in the size of a right upper lobe mass and peritracheal nodes in his right lung. (SVBGH Supplemental Undisputed Facts ¶ 9(a).) SVBGH specifically sets forth in its undisputed facts that the May 12, 1999, CT scan was for diagnostic purposes. (Mot. for Summ. J. Undisputed Fact 2; Br. in Supp. of Summ. J. Mot. ¶ I(A).) The undisputed facts do not support, and SVBGH has not alleged, that Mr. LeBeau was in an emergency medical situation for which the CT scan had to be performed precisely at that time and on that date. Virginia Code § 8.01–220.2 only

provides for spousal liability in emergency medical situations. Mr. LeBeau had been struggling with lung cancer for months when he had the CT scan, and the parties do not dispute that the CT scan was performed as a diagnostic measure to determine future treatment. As such, the CT scan was not done as a result of any immediate medical situation that would qualify as emergency medical care under the statute.

### III. Conclusion

For the reasons set forth above, the court **GRANTS** plaintiff SVBGH's motion for summary judgment against June C. LeBeau, in her capacity as Executor of the Estate of Ernest R. LeBeau, and **DENIES** plaintiff's motion for summary judgment against June C. LeBeau, in her individual capacity.

■ Moreover, summary judgment may be rendered in favor of the nonmoving party, even though that party has made no formal motion under Federal Rule of Civil Procedure 56. *See, e.g., Celotex Corp. v. Catrett*, 477 U.S. 317, 326, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Dickeson v. Quarberg*, 844 F.2d 1435, 1444 n. 8 (10th Cir. 1988); *National Expositions, Inc. v. Crowley Maritime Corp.*, 824 F.2d 131, 133 (1st Cir.1987); *see also Dabney v. Cunningham*, 317 F.Supp. 57 (E.D.Va.1970); 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure: Civil 3d* § 2720, at 351–52 (1998).[2] Given this Opinion of the court, SVBGH is hereby on notice to present any

---

1. "During" is a key, operative word in the statute for coverage of in-patient care. SVBGH argues that all of the in-patient care provided to Mr. LeBeau meets the statutory definition of "emergency medical care," but the statute only provides for spousal liability for in-patient care that is *during* an initial emergency admission. The statutory definition of emergency medical care is relevant only for determining whether the initial admission qualifies as an emergency admission

from which the in-patient care flows. Simply put, the court does not apply the statutory definition of emergency medical care to the in-patient care. That definition is applied to the initial admission. Once an initial admission qualifies as emergency medical care under the statutory definition, then all of the in-patient care provided *during* that initial emergency admission is covered.

2. If there are no material facts in dispute, determining whether the care rendered meets

further evidence, if any, demonstrating that there is a genuine issue of fact and that LeBeau is not entitled to judgment as a matter of law in her individual capacity. *See Celotex Corp.*, 477 U.S. at 326, 106 S.Ct. 2548 ("[D]istrict courts are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence."). Said further evidence, if any, must be submitted by SVBGH on or before February 28, 2002.[3]

IT IS SO ORDERED.

### ORDER

Pursuant to the court's opinion of February 22, 2002, Sentara Virginia Beach General Hospital ("SVBGH") has submitted no further evidence in regard to the issue raised by its Motion for Summary Judgment, namely that June C. LeBeau, as the spouse of Ernest R. LeBeau, is individually liable for his medical bills totaling $241,193.85, incurred for services provided by SVBGH on May 12, 1999, and for the period of May 28 to July 8, 1999. For the reasons set forth in the court's opinion of February 22, 2002, the court hereby GRANTS summary judgment in favor of Mrs. LeBeau in her individual

capacity for all liability for the aforesaid services because they do not qualify as "emergency medical care" under Virginia Code § 8.01–220.2.

Accordingly, the Clerk shall enter judgment for Mrs. LeBeau in her individual capacity for any liability under Virginia Code § 8.01–220.2.[1] The Clerk is also directed to forward a copy of this order to all counsel of record.

IT IS SO ORDERED.

---

the statutory definition is a conclusion of law that the court appropriately makes in ruling on the motion for summary judgment. LeBeau incorrectly asserts to the contrary.

3. SVBGH has already filed a motion for summary judgment and memorandum in support that contained a significant amount of evidence, including detailed medical and hospital records, as well as a supplemental filing that included eight doctor's reports dated from May 14, 1999, through July 7, 1999. *See supra* at ————. This evidence, in conjunction with the undisputed facts, suggests to the court that SVBGH has no further relevant material to provide the court at this point in the litigation. Only out of an abundance of caution does the court even entertain such submission.

1. The Motion for Summary Judgment before the court was based, submitted, briefed, and decided solely on the issue of liability under Virginia Code § 8.01–220.2. The court did not address SVBGH's theory of recovery under Virginia's common law doctrine of necessaries, codified in Va.Code Ann. § 55–37 (Michie 2000) (common law doctrine of necessaries made equally applicable to both spouses on July 1, 1984), as the issue was never raised in the Motion for Summary Judgment. SVBGH did raise this basis of recovery in its original complaint (Motion for Judgment originally filed in state court), and retains the ability to present evidence and argument on this theory of liability at trial.